# EXHIBIT A

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release ("Agreement") is hereby entered into by and between Zsuzsy Sanford ("Ms. Sanford") on the one hand, and Creative Hairdressers, Inc. d/b/a Hair Cuttery ("CHI") and Ratner Companies, L.C. ("Ratner") on the other hand, for good and valuable consideration. (CHI and Ratner are collectively referred to as "Defendants," and Defendants and Ms. Sanford are herein collectively referred to as the "Parties.") This Agreement shall be effective the date that all of the conditions of the first sentence of Section 3 have been satisfied.

WHEREAS, Ms. Sanford is party to a lawsuit currently pending in the United States District Court for the District of Massachusetts (the "Court") entitled *Zsuzy Sanford et al. v. Creative Hairdressers, Inc. et al.*, No. 18-cv-10132, in which Ms. Sanford alleges violations of the Fair Labor Standards Act, the Massachusetts Payment of Wages Act, and the Massachusetts Minimum Fair Wages Act, as a putative class/collective action (the "Federal Action");

WHEREAS, Defendants deny and continue to deny that they are liable to Ms. Sanford, that any amounts are owed to Ms. Sanford, that they engaged in any form of wrongful or unlawful conduct with respect to Ms. Sanford, or that any class/collective action could be maintained in the Federal Action;

WHEREAS, the Parties have agreed that it is in their mutual interest, in order to avoid further costs of litigation, to resolve fully and finally all of their disputes, including the claims and allegations concerning, relating to, or arising out of the Federal Action or relating to Ms. Sanford's wages, hours, or compensation, upon the terms and conditions more fully set forth hereinafter;

NOW, THEREFORE, in consideration of the mutual promises and covenants contained herein, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

1. **Non-Admission of Liability.** Ms. Sanford agrees that Defendants enter into this Agreement solely for the purpose of avoiding the burdens and expenses of further litigation. This Agreement shall not in any way be construed as an admission by Defendants of any liability or any act of wrongdoing whatsoever against Ms. Sanford or any other individual relating to wages, hours, or compensation. Defendants specifically disclaim any liability or wrongdoing whatsoever against Ms. Sanford or any other individual.

2. **Court Approval and Dismissal of the Federal Action.**

    a.  This Settlement Agreement will be submitted to the Court for approval in a public filing.

    b.  Promptly after executing this Agreement, Ms. Sanford (by her counsel) will execute and deliver to Defendants' counsel a Joint Stipulation and/or Motion for Dismissal of the Federal Action with prejudice in form and content satisfactory to Defendants and their counsel. Ms. Sanford agrees to take any and all steps necessary to dismiss her claims in the Federal Action with prejudice, and hereby agrees to join in publicly filed motions seeking approval of this settlement. Ms. Sanford and her counsel specifically agree

1

      to cooperate with Defendants and their counsel in obtaining court approval of the settlement under the Fair Labor Standards Act and as may be required under any other applicable law. In all communications with the Court, Ms. Sanford and her counsel will affirmatively express their support of the settlement and ask that it be approved, and will confirm that the amount and other terms of the settlement are fair and reasonable.

    c.    Ms. Sanford further agrees that she will not seek to prosecute any motions pending in the Federal Action, and will request that the Court place any pending motions in abeyance until the Court can rule on a Joint Stipulation and/or Motion for Dismissal.

    d.    The dismissal of Ms. Sanford's claims in the Federal Action with prejudice, including but not limited to her claims under the Fair Labor Standards Act, is an essential condition to Defendants' obligations under this Agreement. If for any reason the Court declines to dismiss any or all of Ms. Sanford's claims in the Federal Action with prejudice, including but not limited to her claims under the Fair Labor Standards Act, Defendants may declare this settlement null and void, and Defendants will have no further obligations under this Agreement.

3.    **Settlement Benefits.**  Within fourteen (14) days after and only after (1) Ms. Sanford has provided an executed form of this Agreement, (2) Ms. Sanford and her counsel complete, sign and provide the appropriate IRS W-4 and W-9 forms, and (3) the Court has approved this settlement and dismissed the Federal Action, as set forth in Section 2(b), Defendants will provide payments totaling Twenty-Five Thousand Dollars and No Cents ($25,000.00). Payment of this amount shall be issued as follows:

    a.    A check for eight thousand three hundred thirty-three dollars and thirty-four cents ($8,333.34), less applicable taxes and withholdings, made payable to Zsuzsy Sanford, which is intended to compensate Ms. Sanford for wage-based damages; and

    b.    A check for eight thousand three hundred thirty-three dollars and thirty-three cents ($8,333.33), made payable to Zsuzsy Sanford, which is intended to compensate Ms. Sanford for liquidated damages; and

    c.    A check for eight thousand three hundred thirty-three dollars and thirty-three cents ($8,333.33), made payable to Lichten & Liss-Riordan PC, which is intended to compensate for attorneys' fees and costs.

4.    **Tax Treatment.**  The benefits and payments set forth in Section 3(a) shall be reported to federal and state taxing authorities on Form W-2, and the benefits and payments set forth in Sections 3(b) and 3(c) shall be reported to federal and state taxing authorities on Form 1099. Ms. Sanford and Defendants agree that the amounts set forth herein shall not affect the scope of the release of claims by Ms. Sanford in Section 5. Nothing in this Agreement shall be construed to require Defendants to make any payments to compensate Ms. Sanford for any adverse tax effect associated with any payments or benefits or for any deduction or withholding from any

2

payment or benefit. The allocation and characterization of the payments set forth herein do not in any way affect Ms. Sanford's independent obligation and primary responsibility to determine and make proper judgments regarding the payment of taxes under applicable law.

5. **Limited Release of Claims.** In exchange for the benefits and promises contained herein, to which Ms. Sanford would not be entitled absent execution of this Agreement, Ms. Sanford, for herself, her representatives, heirs, assigns, and/or any other person or entity claiming by, through or under her (collectively, the "Releasors") agrees to release, waive, acquit and forever discharge CHI, Ratner, and their respective divisions, subsidiaries, Affiliates, insurers, related companies, parents, predecessors, and successors, and each of their respective shareholders, owners, principals, directors, officers, agents, servants, managers, members, partners, insurers, employees and attorneys, past or present, (collectively, the "Releasees") from any and all charges, complaints, claims, liabilities, obligations, promises, agreements, controversies, damages, actions, causes of action, suits, rights, demands, costs, losses, debts and expenses (including attorneys' fees and costs), of any nature whatsoever, known or unknown ("Claim" or "Claims"), that the Releasors now have, own, or hold, or claim to have, own, or hold, or that the Releasors at any time had, owned, or held, or claimed to have had, owned, or held against each or any of the Releasees, which Claims arise out of or relate to the Federal Action or relate to wages, hours, or compensation. This release shall include any and all Claims that were asserted in, arise out of, or are related to the subject matter of the Federal Action and arise out of or relate in any way to the federal and/or state wage, hour and/or compensation laws, including without limitation Claims under the Fair Labor Standards Act, 29 U.S.C. § 201 et seq., the Massachusetts Payment of Wages Act, M.G.L. c. 149, § 148, or the Massachusetts Minimum Fair Wages Act, M.G.L. c. 151; all Claims for unpaid or delayed payment of wages, bonuses, tips, commissions, expenses, deductions, paid time off, benefits, missed or interrupted meal periods leaves of absence, vacation pay, severance, overtime, or all other forms of compensation; all Claims for breach of express or implied contract, unjust enrichment, quantum meruit, restitution, and/or breach of covenant of good faith and fair dealing; all Claims for exemplary, liquidated, multiple and/or punitive damages; and/or all Claims for interest, attorneys' fees, costs, expenses. This release does not include any Claim which, as a matter of law, cannot be released by private agreement such as claims for unemployment compensation and workers compensation; and does not include any claims under the Age Discrimination in Employment Act or the Older Workers Benefit Protection Act.

"Affiliates" means all persons and entities directly or indirectly controlling, controlled by or under common control with CHI and/or Ratner, where control may be by management authority, contract, equity interest or otherwise.

6. **Affirmations.** Once Defendants issue payment to Ms. Sanford pursuant to Section 3 of this Agreement, Ms. Sanford affirms that she has been paid and/or has received all compensation, wages, bonuses, commissions and/or expense reimbursements to which she may be entitled and that no compensation, wages, bonuses, commissions and/or expense reimbursements are due to her, beyond those set forth herein. Ms. Sanford affirms that, by virtue of Defendants' promises and payments set forth in this Agreement, she has received fair economic value for any and all potential claims or causes of action she may have against the Releasees in the Federal Action, and that she is not entitled to any other damages or relief. Further, Ms. Sanford affirms that she is not aware of any unreported workplace injuries and has been provided and/or has not been denied any leave requested under the Family and Medical Leave Act, or any other workplace

3

leave statute. Ms. Sanford further affirms that she is not aware of any unreported instances of fraud or impropriety on the part of the Releasees.

7.  **Other Actions and Covenant Not to Sue.**  Ms. Sanford represents and warrants that she has not commenced, maintained, prosecuted or participated in any action, suit, charge, grievance, complaint or proceeding of any kind against the Releasees, in any court or before any administrative or investigative body or agency (other than the Federal Action described above, and a matter pending before the Massachusetts Commission Against Discrimination). Ms. Sanford further represents and warrants that she shall not further prosecute the Federal Action, and will not cause or authorize suit against the Releasees for any matter that was, or might have been, included in any of the Claims listed above, and shall not encourage any other person to file suit against the Releasees. Ms. Sanford further agrees not to participate in any other action, suit, charge, grievance, complaint or proceeding against the Releasees, whether on a class, collective, or representative basis, or otherwise.

8.  **Confidentiality**.

    a.  Ms. Sanford acknowledges that this Agreement, its terms, and all negotiations and discussions that led to the formation of this Agreement, are strictly confidential, and that such confidentiality was a critical consideration in entering into this Agreement. Other than as is necessary to effectuate Section 2, Ms. Sanford, whether directly or indirectly, whether personally or through other persons or entities, will not disclose to any third party or publicize in any way this Agreement, or its terms, or the fact that a large or small monetary amount, or any monetary amount at all, is included in the settlement, except to her spouse, her accountant, professional tax advisor or attorney (provided he or she agrees to be bound by the terms of this Section), or as required by law or legal process. Except for the above-listed individuals, in response to any inquiries, Ms. Sanford will state that "the matter has been resolved" only, and nothing more.

    b.  Ms. Sanford further agrees not to waive the attorney-client privilege regarding any allegations of wrongdoing that she may have against Defendants; or this Agreement or any of its terms or provisions; or any of the negotiations and discussions that led to the formation of this Agreement, nor shall Ms. Sanford solicit other individuals to contact Ms. Sanford's counsel or other attorneys to seek relief against the Releasees in connection with any claim in the Federal Action or based on the same or similar facts or theories as those alleged in the Federal Action.

    c.  Ms. Sanford acknowledges that any breach of Section 8 shall constitute a material breach of this Agreement as to which Defendants may seek all relief available under the law. Defendants shall be entitled to an injunction or other equitable relief to prevent such breach. If a breach is proven in a legal proceeding, Defendants shall also be entitled to reasonable attorney's fees incurred in the prosecution of any civil action or other legal proceedings arising from the breach of these provisions.

9. **No Assignment of Claims to Third-Parties.** Ms. Sanford represents that she has not heretofore assigned or transferred, or purported to assign or transfer to any person or organization, any Claim released herein, or any part or portion thereof, and she agrees to indemnify and hold harmless the Releasees from and against any claim, demand, damage, debt, liability, account, reckoning, obligation, cost, expense (including payment of attorneys' fees and costs actually incurred, whether or not litigation is commenced), lien, action, and cause of action, based on, in connection with, or arising out of any such assignment or transfer, or purported assignment or transfer.

10. **No Reliance.** Each of the Parties represents and acknowledges that in executing this Agreement, it/she does not rely and has not relied upon any representation or statement made by any other of the Parties or by any other of the Parties' agents, representatives or attorneys with regard to the subject matter, basis or effect of this Agreement, other than the promises and representations made in this Agreement.

11. **Governing Law, Jurisdiction and Venue.** This Agreement shall be deemed to be made and entered into in the Commonwealth of Massachusetts, and shall in all respects be interpreted, enforced and governed under the laws of said Commonwealth, without giving effect to any conflict of laws principles. For purposes of any action to enforce, or for a breach of, this Agreement, the parties irrevocably consent to the jurisdiction of the state and federal courts of Massachusetts.

12. **Binding Nature of Agreement.** This Agreement shall be binding upon each of the Parties and upon the heirs, administrators, representatives, executors, successors and assigns of each of them, and shall inure to the benefit of each party and to the heirs, administrators, representatives, executors, successors, and assigns of each of them.

13. **Entire Agreement.** This Agreement is intended by the Parties as a final expression of their agreement and as a complete and exclusive expression of its terms. This Agreement, which shall be deemed to be a contract under seal, shall supersede all prior discussions, promises, representations or understandings, oral and written, among the parties in connection with the subject matter hereof; provided, that nothing in this Agreement shall modify, alter, cancel or supersede any confidentiality obligations Ms. Sanford may owe Defendants, and does not modify, alter, cancel or supersede any other settlement agreements to which Ms. Sanford is a party, all of which shall survive the execution of this Agreement.

14. **Cooperative Drafting and Construction.** The language of this Agreement shall in all cases be construed as a whole, according to its fair meaning, and not strictly for or against any of the Parties, it being agreed that all Parties (including by and through their respective attorneys) have participated in the preparation of all provisions of this Agreement. Thus, this Agreement shall not be construed against any Party on the basis that such Party was the drafter.

15. **Severability.** In the event that any one or more of the provisions of this Agreement is held to be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions will not be affected or impaired thereby. This Agreement shall survive the performance of the specific arrangements contained herein.

16. **Modification.** This Agreement may be amended, revoked, changed, or modified only upon a written agreement executed by all Parties. No waiver of any provision of this Agreement will be valid unless it is in writing and signed by the Party against whom such waiver is charged.

17. **Costs.** Each Party hereto will bear her or its own costs, expenses and attorney's fees, whether taxable or otherwise, incurred or arising out of or in any way related to the Federal Action, this Agreement or the circumstances underlying either.

18. **Breach.** Ms. Sanford understands and agrees that she would not receive the monies and/or benefits specified in this Agreement, except for her execution of this Agreement and the fulfillment of the promises and representations contained herein. In the event that Ms. Sanford, or any agent or attorney of hers, breaches any part of this Agreement or rejects this Agreement, Defendants shall be entitled to pursue recovery of such payments made hereunder, as well as seek injunctive relief without bond to restrain such breach or threatened breach

19. **Attorneys' Fees.** In any litigation, or other proceeding by which one party either seeks to enforce its rights under this Agreement as a result of a breach or seeks a declaration of any rights or obligations under this Agreement, the prevailing party shall be awarded its reasonable attorney's fees, and costs and expenses incurred.

20. **Counterparts.** This Agreement may be executed and delivered (a) in one or more counterparts, each of which shall be deemed to be an original, but all of which together shall constitute one and the same instrument, and/or (b) by facsimile and/or electronically, in which case the instrument so executed and delivered shall be binding and effective for all purposes.

21. **No Interference with Rights**. Ms. Sanford understands, agrees and acknowledges that nothing in this Agreement, including but not limited to Sections 5 (Limited Release of Claims), 7 (Other Actions and Covenant Not to Sue), and 8 (Confidentiality), prohibits or bars her from reporting possible violations of any law or regulation, providing truthful testimony in any legal proceeding, or from cooperating with, making truthful disclosures to, providing documents or other information to, or filing a charge with any governmental authority (including, without limitation, the United States Equal Employment Opportunity Commission, the Securities and Exchange Commission, the Occupational Safety and Health Administration of the Department of Labor, and the National Labor Relations Board), or from exercising her rights under Section 7 of the National Labor Relations Act to engage in protected, concerted activity. Notwithstanding the foregoing, with respect to any claim that cannot be released by private agreement and/or with respect to any charge filed with any governmental authority, Ms. Sanford agrees to release and waive her right (if any) to any individual monetary damages or other individual recovery (including, without limitation, attorneys' fees) as to such claims, including any claims brought on her behalf, either individually or as part of a collective action, by any governmental agency or other third party, except where such a waiver of individual relief is prohibited by law, and except for any right she may have to receive a payment directly from a government agency (and not from Defendants) for information provided to the government agency.

PLEASE READ CAREFULLY. THIS SETTLEMENT AGREEMENT AND RELEASE HAVE IMPORTANT LEGAL CONSEQUENCES.

6

IN WITNESS WHEREOF, the Parties have each executed this Agreement, signed as a sealed instrument, as of the last date written below.

_____
ZSUZSY SANFORD

Dated: 04/19/18, 2018

CREATIVE HAIRDRESSERS, INC.

By:_____

Title:_____

Dated: _____, 2018

RATNER COMPANIES, L.C.
By: Creative Hairdressers, Inc., Manager

By:_____

Title:_____

Dated: _____, 2018

7

**IN WITNESS WHEREOF**, the Parties have each executed this Agreement, signed as a sealed instrument, as of the last date written below.

_____
ZSUZSY SANFORD

Dated: _____, 2018


CREATIVE HAIRDRESSERS, INC.

By: _____*Pin e.6w*_____

Title: _____*V.P.*_____

Dated: ____*4-25-*____, 2018    *BH 4-25-18*


RATNER COMPANIES, L.C.
By: Creative Hairdressers, Inc., Manager

By: _____*Pin e6w*_____

Title: _____*V.P.*_____

Dated: ____*4-25-*____, 2018    *BH 4-25-18*

7